WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andres Bolinaga, Jr., | No. CV-16-02713-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Andres Bolinaga's appeal of the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, the Court affirms the decision.

## BACKGROUND

On June 8, 2012, Andres Bolinaga applied for disability insurance benefits, alleging a disability onset date of January 1, 2010. (Tr. 18.) Bolinaga's claim was denied both initially and upon reconsideration. (*Id.*) He then appealed to an Administrative Law Judge ("ALJ"). (*Id.*) The ALJ conducted a hearing on the matter on September 11, 2014. (Tr. 42.)

/ / /

/ / /

In evaluating whether Bolinaga was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] At step one, the ALJ determined that Bolinaga had not engaged in substantial gainful activity since his alleged onset date. (Tr. 20.) At step two, the ALJ determined that Bolinaga suffered from severe impairments of "coronary artery disease, status post coronary artery bypass graft and stents; and chronic obstructive pulmonary disease (COPD)." (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (Tr. 27–28.)

The ALJ then made the following determination of Bolinaga's residual functional capacity ("RFC"):[2]

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he had environmental limitations and should avoid even moderate exposure to extreme cold, avoid even moderate exposure to extreme heat, and avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, etc.

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, . . . she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p, 1996 WL 374184 (July 2, 1996).

(Tr. 28.) The ALJ therefore found that Bolinaga retained the RFC to perform his past relevant work as a "computer information technology (IT) manager." (Tr. 32.) The ALJ found that this work best fit the Dictionary of Occupational Titles ("DOT") listing for "Systems Programmer," but noted that to the extent the work might also be characterized as "Support Analyst Supervisor" or "Systems Analyst," Bolinaga retained the RFC to perform those jobs as well. (*Id.*)

On June 8, 2016, the Appeals Council declined to review the decision. (Tr. 1.) Bolinaga filed the complaint underlying this action on August 10, 2016, seeking this Court's review of the ALJ's denial of benefits. (Doc. 1.)

**DISCUSSION**

**I.     Standard of Review**

A reviewing federal court need only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). However, the Court "must consider the entire record as a whole and may not affirm simply by isolating a

'specific quantum of supporting evidence.'" *Id.* (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Nor may the Court "affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

## II. Analysis

Bolinaga contends that the ALJ (1) failed to consider evidence that would demonstrate that Bolinaga met the step three listing for coronary artery disease; (2) failed to correctly categorize Bolinaga's past relevant work; and (3) improperly discredited Bolinaga's pain testimony based on his daily activities.

### A. Step Three Listing

At step three, the ALJ must "consider[] whether the [claimant's] impairment or combination of impairments meets or equals a listed impairment." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Bolinaga contends that the ALJ should have found Bolinaga to meet Listing 4.04(C), for coronary artery disease. That listing is met by:

> Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence showing:
>
> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
>
> b. 70 percent or more narrowing of another nonbypassed coronary artery; or
>
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
>
> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
>
> e. 70 percent or more narrowing of a bypass graft vessel; and
>
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily

living.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04(C).

The ALJ considered, in his earlier step two analysis, numerous medical records that indicate that Bolinaga met the portion of the listing dealing with angiographic evidence. With respect to the narrowing of blood vessels, the ALJ summarized the following records:

> The claimant underwent a left heart catheterization and selective coronary angiography on January 22, 2010, which revealed significant narrowing in multiple arteries, and Dr. Khan, a cardiologist, recommended surgical revascularization (Exhibit 8F, p. 84).
>
> [. . .]
>
> On December 7, 2011, the claimant underwent a left heart catheterization, selective coronary angiography, and other diagnostic testing, which revealed a normal left main coronary artery, but a right coronary artery with more than 90% narrowing, and a totally occluded saphenous vein graft (Exhibit 8F, pp. 17–19). The stent-supported angioplasty of the mid right coronary artery was successful (Exhibit 8F, p. 19).
>
> [. . .]
>
> On July 18, 2012, the claimant underwent a left heart catheterization and various angiographies, which revealed severe multi-vessel coronary artery disease with a totally occluded saphenous vein graft (Exhibit 8F, pp. 42–43). A left ventriculography showed an ejection fraction of 60–65% (Exhibit 8F, p. 43).
>
> [. . .]
>
> The claimant was hospitalized at Banner Thunderbird Medical Center from April 29, 2013 to May 1, 2013 for some atypical chest pain (Exhibit 19F, p. 2). The atypical chest pain resolved (*id.*). A cardiac catheterization showed severe multi-vessel coronary artery disease and a totally occluded saphenous vein graft, but medical management was recommended (*id.*). Other diagnoses included hypertension, diabetes mellitus, hyperlipidemia, hypothyroidism, and obesity (*id.*).
>
> [. . .]
>
> On December 22, 2013, the claimant underwent a left heart catheterization and selective coronary angiography (Exhibit 31F, p. 25). The left main artery was angiographically

> normal, the left anterior descending artery was totally occluded with patent left internal mammary artery graft, the large principal diagonal artery had patent stents, the obtuse marginal branch of the left circumflex artery and right coronary artery codominant had patent stents, and left ventricular systolic function was normal (Exhibit 31F, p. 26).

(Tr. 21–26.) Thus Bolinaga's argument that "the ALJ ignored all evidence that would lead to finding Plaintiff met Listing 4.04(C)," (Doc. 12 at 15), is at odds with the ALJ's opinion. To the extent that the ALJ did not explicitly discuss these records in his step three analysis, it was unnecessary for the ALJ to do so. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200–01 (9th Cir. 1990) (upholding ALJ's step three determination when the ALJ "made a five page, single-spaced summary of the record" but did not "state what evidence supported the conclusion that appellant's impairments do not meet or exceed the Listing of Impairments").

Nor does this evidence alone establish that Bolinaga meets Listing 4.04(C); as the Supreme Court has explained, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria" and "an impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The ALJ cited substantial evidence indicating that Bolinaga's coronary artery disease did not "result[] in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04(C).

For example, the ALJ noted that in February 2010, Bolinaga "denied any significant shortness of breath, was able to ambulate, denied chest pain, except for incisional pain of the sternum, and denied syncope or palpitations." (Tr. 21.) In June 2012, Bolinaga suffered from "vertigo/dizziness" but there was no indication that this was related to his coronary artery disease, as the treating physician "concluded that the dizziness was of unclear etiology." (Tr. 23.) Likewise, while Bolinaga complained in April 2014 of intermittent pulmonary symptoms, "aggravated by moderate activity," (Tr. 27), the records of that visit indicate that these symptoms were related to his COPD,

rather than coronary artery disease. (Tr. 2145.)

It is the claimant's burden to demonstrate that his impairment meets or equals a listing. *Burch*, 400 F.3d at 683. Bolinaga fails to address the "serious limitations" criterion of Listing 4.04(C) in his opening brief altogether, and while he points to certain limitations in his reply brief, he only ties one to his coronary artery disease specifically— as opposed to his COPD or pain from his shattered sternum. That asserted limitation is that Bolinaga "was hospitalized ten times for his coronary artery disease" during the time period at issue. But Bolinaga points to no authority holding that sporadic hospitalizations, without more, satisfy the "serious limitations" criterion of Listing 4.04(C). Indeed, courts have expressly declined in other contexts to "presum[e] that any condition requiring temporary hospitalization is disabling." *Burch v. Coca-Cola Co.*, 119 F.3d 305, 317 (5th Cir. 1997) (Americans with Disabilities Act); *see also Taylor v. U.S. Postal Serv.*, 946 F.2d 1214, 1217 (6th Cir. 1991) (Rehabilitation Act). It was not error in this context for the ALJ to find that ten hospitalizations—a number of which appear to be for only one night—spread out over nearly five years did not seriously interfere with Bolinaga's activities of *daily* life. Moreover, as the ALJ noted, many of the records of these hospital visits indicate that the chest pain for which the claimant was admitted was not related to heart disease.

Further, the ALJ properly relied on the opinions of the two state agency physicians who found that Bolinaga did not meet a listing at step three. (Tr. 61–97.) While an ALJ is not bound by the state agency physicians' opinion as to whether a claimant meets or equals a listing, he must give such evidence appropriate weight. *See* S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).

In sum, the ALJ had substantial evidence by which he could reasonably conclude that Bolinaga had not met his burden at step three.

**B. Past Relevant Work**

In determining at step four that Bolinaga could perform his past relevant work, the ALJ wrote the following:

> The claimant has past relevant work as a computer IT manager, which he has described as a technical manager or help desk supervisor/system administrator in the computer software business, and which he performed at the medium level of exertion. The claimant performed this work within the last 15 years at a substantial gainful activity level and long enough to learn how to do it. Initially, a State Agency disability analyst determined that the claimant's past relevant work is best characterized in the Dictionary of Occupational Titles (DOT) as User Support Analyst Supervisor (DOT 032.132-010), which is sedentary and skilled (SVP 8) work, and/or Systems Analyst (DOT 030.167-014), which is sedentary and skilled (SVP 7) work. On reconsideration, a State Agency disability analyst determined that claimant's past relevant work is best characterized in the DOT as Systems Programmer (DOT 030.162-022), which is sedentary and skilled (SVP 7) work. The undersigned may take administrative notice of the DOT and adopts the characterization of Systems Programmer. Given that all of these DOT characterizations are for sedentary work and none of them requires exposure to temperature extremes or pulmonary irritants, the ultimate outcome of this case will remain the same even if a reviewing authority were to choose User Support Analyst Supervisor and/or Systems Analyst.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as generally performed. The residual functional capacity given above . . . does not preclude the performance of the occupation of Systems Programmer, User Support Analyst Supervisor, and Systems Analyst as generally performed.

(Tr. 32.)

Bolinaga asserts that the ALJ erred in classifying his past relevant work as Systems Programmer, in part because "[t]here is no indication that Plaintiff did any programming or coding at his past job or that he knows how to code." (Doc. 12 at 18.) But the DOT's description of Systems Programmer does not include programming or coding as such:

> Coordinates installation of computer operating system software and tests, maintains, and modifies software, using computer terminal: Reads loading and running instructions for system software, such as task scheduling, memory management, computer file system, or controlling computer input and output, and loads tape into tape drive or transfers software to magnetic disk. Initiates test of system program and observes readout on monitor of computer system to detect errors or work stoppage. Enters code changes into computer system to correct errors. Analyzes performance indicators,

- 8 -

> such as system's response time, number of transactions per second, and number of programs being processed at once, to ensure that system is operating efficiently. Changes system software so that system performance will meet objectives. Reviews computer system capabilities, workflow, and scheduling limitations to determine if requested changes to operating system are possible. Writes description of steps taken to modify system and procedures required to implement new software. Assists users having problems with use of system software. May train users, COMPUTER OPERATOR (clerical) 213.362-010, and COMPUTER PROGRAMMER (profess. & kin.) 030.162-010 to use system software. May prepare workflow charts and diagrams to modify system software. May visit vendors to observe demonstration of systems software. May administer and monitor computer program that controls user access to system. May review productivity reports and problem records to evaluate performance of computer system.

U.S. Dep't of Labor, Dictionary of Occupational Titles § 030.162-022, 1991 WL 646545 (2016).

Bolinaga described his past relevant work in similar terms. He did help desk work, where people would call with questions about both software and hardware. (Tr. 45.) He "supervised technicians helping software customers" and helped customers with complicated questions himself, as well as "maintained [an] in-house computer and network." (Tr. 217.) It was reasonable for the ALJ to classify this work as a System Programmer, even if Bolinaga's description of his past work did not include every task listed in the DOT. *See Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (noting that the DOT describes occupations, not jobs, and that consequently it may include tasks that are not essential for a specific job within a broad occupational classification).

The ALJ found that Bolinaga retained the RFC to perform this work. As Systems Programmer is classified as "sedentary work," and Bolinaga's RFC permits him to perform up to "light work," this was not erroneous. *See* 20 C.F.R. § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Nor did the ALJ err, as Bolinaga asserts, in failing to consider whether changes in computer technology between 2008 and the present day

make Bolinaga's past relevant work less relevant. *See* 20 C.F.R. 404.1560(b)(3) ("If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.").

The claimant bears the burden of showing at step four that he cannot perform his past relevant work. *Pinto v. Massanari*, 249 F.3d 940, 844 (9th Cir. 2001). The ALJ did not err in concluding that Bolinaga did not meet this burden.

### C. Credibility Analysis

The ALJ found that Bolinaga's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible for the reasons explained in this decision." (Tr. 29.) In so doing, the ALJ found that (1) "[t]he objective medical evidence and claimant's treatment history support the need for work restrictions, but they do not substantially support the claimant's allegation that he is unable to work"; and (2) "[t]he claimant's reported activities and demonstrated abilities contradict the alleged degree of impairment severity." (Tr. 29–30.)

Bolinaga does not address the numerous portions of the medical record that contradict his assertions of an inability to work as cited to by the ALJ. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). As the ALJ noted, Bolinaga's treating physicians consistently told him to exercise. (Tr. 30, 405, 1488, 1500, 2268, 2277.) The ALJ reasonably inferred that Bolinaga's "treating sources would [not] make such a recommendation unless they believed the claimant capable of doing so safely." (Tr. 30.)

The ALJ reasonably relied on numerous portions of the record indicating that Bolinaga's symptoms were not as severe as he testified. For example, in December 2012, Bolinaga reported that he suffered "mild" dyspnea, "occasionally," which was aggravated by activity such as climbing stairs and running. (Tr. 24, 1579.) He denied any chest

pressure, fatigue, or substernal chest pain. (Tr. 24, 1579.) The following month, in January 2013, he reported that he had not had any significant anginal-type chest pains. (Tr. 24, 1842.) In March 2013, while Bolinaga complained of fatigue while doing yard work, he also denied any chest discomfort, any anginal-type episodes, and any shortness of breath. (Tr. 24, 1837.) In September 2013, Bolinaga reported difficulty walking due to lower extremity pain, but said he was doing "okay" from a cardiac standpoint and had had no anginal-type episodes. (Tr. 25, 2243.) In October 2013, he again reported "intermittent" and "mild" dyspnea but denied chest pressure and substernal chest pain. (Tr. 25, 1984.)

Further, the record demonstrates that Bolinaga performed well on medical exercise tests. In June 2013, Bolinaga performed a six-minute walk test; he walked 1,000 feet, was only "very slightly (just noticeabl[y])" out of breath, saw his heart rate increase from 73 beats per minute to 90, and his oxygen saturation decrease from 92% to 90%. (Tr. 25, 1934.) Likewise, in November 2013, Bolinaga performed a stress test, in which he reached his target heart rate, had normal EKG readings, and saw his shortness of breath resolve in the recovery phase. (Tr. 26, 2255.)

Bolinaga only challenges the sufficiency of the ALJ's reasoning as to Bolinaga's daily activities.[3] (Doc. 12 at 20–22.)

Daily activities that are "transferable to a work setting" may be used to discredit a claimant's testimony of work-preclusive symptoms. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The ALJ primarily relied on two function reports completed by Bolinaga to demonstrate that Bolinaga engaged in daily activities that are transferable to the work setting. (Tr. 30–31, 225, 252.) In those reports, Bolinaga reported that on an average day he would:

> Feed cats, dogs, myself, take medicine, water plants in yard,

---

[3] In his Reply, Bolinaga briefly addresses the treating physicians' recommendation of exercise, and the results of a single exercise test. (Doc. 17 at 6.) He does not address the other medical records the ALJ discussed, and at any rate, arguments not raised in the opening brief are waived. *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 n.4 (9th Cir. 1999).

> read, watch TV, nap in morning, read, watch TV, clean house, nap in afternoon, try to ride exercise bike, take medicine, read, watch TV, eat, go to sleep. Also clean litter box for cats.

(Tr. 223.) He reported that he went to "church, grocery store, [and] college class" on a regular basis, though was not always able to do so, and that he could usually finish what he started. (Tr. 227–28.) He was able to drive a car. (Tr. 253.) The ALJ accurately summarized the contents of these reports, including that certain activities could only be completed "when able." (Tr. 31.)

The Ninth Circuit has previously found that a claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child" may suffice as a clear and convincing reason to discredit his testimony of being unable to work. *Morgan*, 169 F.3d at 599–600. Here, similarly, Bolinaga's ability to fix meals, do housework and sometimes yardwork, care for pets, and maintain an active—albeit sometimes limited—social life is a clear and convincing reason that he has the ability to work, especially given that his past relevant work is sedentary. Bolinaga reported that his medical conditions do not affect his ability to see, hear, talk, concentrate, follow instructions, get along with others, use his hands, understand, remember, or complete tasks. (Tr. 228, 255.) That these abilities remain unaffected, and that Bolinaga carries out other activities in spite of certain limitations, serve as clear and convincing evidence that he is capable of working.

The ALJ thus had substantial evidence in the record which he could reasonably interpret as contradicting Bolinaga's assertions of work-preclusive symptoms. The Court does not second-guess the ALJ's reasonable interpretation of the record, *Matney*, 981 F.2d at 1016, and this reasonable interpretation—along with Bolinaga's daily activities—is a clear and convincing reason to find Bolinaga's symptom testimony less than fully credible.

/ / /

/ / /

## CONCLUSION

The ALJ did not err in denying Bolinaga's application for benefits, and the decision is affirmed.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court is directed to terminate this case and enter judgment accordingly.

Dated this 19th day of June, 2017.

_____
Honorable G. Murray Snow
United States District Judge